IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Robert B. FENNIG, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, Complainant,

v.

Robert B. FENNIG, Respondent.

Supreme Court

*No. 98–0039–D. Filed July 1, 1999.*

(Also reported in 595 N.W.2d 710.)

 

¶ 1. PER CURIAM. We review the recommendation of the referee that Attorney Robert B. Fennig be publicly reprimanded as discipline for his professional misconduct while acting as a trustee. Attorney Fennig committed fraud in the course of administering a trust and was found guilty following a court trial of having committed fraud on a bank and fraud on the Illinois court having jurisdiction over the trust. Attorney Fennig had executed notes by which a development corporation set up by the trust's sole beneficiary and of which the trust itself was sole shareholder obtained loans to provide operating capital. Attorney Fennig prepared and executed a corporate borrowing resolution and a guaranty by which the trust undertook to guarantee repayment of the corporate loans. After the loans went into default, he agreed to pay the bank from assets of the trust but did not do so when he terminated the trust and distributed all of its assets to the beneficiary without reserving any trust assets for payment to the bank under the guaranty. In the accountings he filed periodically with the Illinois court, Attorney Fennig did not disclose the bank loans for which the trust was liable.

¶ 2. In light of the seriousness of the misconduct in which he engaged, particularly his failure to disclose liabilities of the trust to the court having jurisdiction over it, we ordered Attorney Fennig to show cause why we should not suspend his license to practice law for 60 days as discipline, rather than impose the public reprimand recommended by the referee. Having considered the response to that order, as discussed below, we determine that the appropriate discipline for Attorney

Fennig's professional misconduct is a 60-day license suspension. He knowingly failed to protect the interests of a creditor of the trust he was administering and withheld essential information about its liabilities from the court under whose jurisdiction it was being administered. Notwithstanding his claim that he was justified in relying on the word of the trust's attorney in respect to incurring and satisfying trust liabilities, Attorney Fennig had a professional duty to ensure that the trust was administered properly and that the court under which it was administered was fully informed.

¶ 3. Attorney Fennig was admitted to practice law in Wisconsin in 1957 and maintains his practice in Milwaukee. He has not previously been the subject of an attorney disciplinary proceeding. The referee, Attorney Stanley Hack, made findings of fact based on Attorney Fennig's admissions and no contest plea in response to the disciplinary complaint and on testimony and evidence presented at a disciplinary hearing.

¶ 4. Attorney Fennig became successor trustee of a testamentary trust in January 1990. The attorney for the trust had an office in the same building in which Attorney Fennig had his law office, and at the time of his appointment, the trust assets amounted to approximately $938,000. The trust situs was in Illinois, its sole beneficiary was the trustor's son, and it was to terminate when the beneficiary reached the age of 50.

¶ 5. Two days after being appointed successor trustee, Attorney Fennig loaned $71,100 from the trust to a new development company organized by the trust's beneficiary and others to purchase and subdivide property in northern Wisconsin. In exchange for the loan, the trust received $100 of stock in the corporation and a note for the balance. The trust held all of the company's stock, and the beneficiary, the trust's attorney, and

381

another person served as its directors. The trust inventory Attorney Fennig filed with the court April 1, 1990, did not list the corporation's stock or its note as assets.

¶ 6. In March 1990 the trust's attorney wrote the company on behalf of the trust that the trust was ready and willing to sign as guarantor or enter directly into a loan agreement regarding the company's financing. Three days later, he wrote a bank seeking a loan and included the April 1, 1990 inventory of trust assets and income, and he participated in discussions with the bank and the company's representatives regarding proposed loans to finance the company's operations. Over the next few months, the bank loaned $40,000 to the company. Notwithstanding that activity, the trust's attorney stated by affidavit at the end of the year that no initial meeting of the company had been held, officers had not been elected, and stock subscriptions were not accepted, with the result that there never were officers or stock holders and no one was authorized to execute documents or enter into agreements on behalf of the company.

¶ 7. In early 1991 Attorney Fennig was named vice president of the company, and the trust's attorney, acting as the company's secretary-treasurer, signed a corporate resolution authorizing the company to borrow and pledge collateral to the bank. Thereafter, the bank loaned $12,000 to the company, and the note evidencing that loan went into default. Attorney Fennig, acting as trustee, and the trust's attorney then signed a guaranty of the company's indebtedness to the bank. At the same time, the trust's attorney wrote the bank that the company was in good standing and that 100 shares of its stock had been issued in the name of the trust. Soon thereafter, Attorney Fennig signed a $45,000 note secured by the trust's guaranty to obtain

a loan from the bank. That loan consolidated two prior loans and provided $20,000 of new money. The bank subsequently made additional loans to the company, and by late 1991 and early 1992, the company defaulted on its loans.

¶ 8. In January 1992 Attorney Fennig filed with the court the 1990 account for the trust, in which he listed the company common stock and the company's note as assets of the trust. In February of that year, he attended a meeting with representatives of the bank regarding repayment of the defaulted loans and the trust's guaranty. On March 5, 1992, he issued a check to the bank drawn on his client trust account for approximately $2500 for a deficiency following the sale of the collateral of one of the loans.

¶ 9. During the ensuing months, the bank and its attorney repeatedly contacted Attorney Fennig regarding payment of the outstanding principal and interest on the company's loans. On two occasions, Attorney Fennig told the bank's lawyer that payment would be forthcoming on a specified date, but payment was not made. At one point, he sent the bank's lawyer a copy of a real estate sales contract concerning some of the trust's property, together with a copy of the check representing the down payment on that sale, stating that the impending sale would generate sufficient funds to satisfy the company's outstanding obligations to the bank.

¶ 10. The bank continued to press for payment to the end of 1992, at which time the trust's beneficiary reached age 50. At that time, Attorney Fennig discussed the status of the trust with the beneficiary and told him of the loan guaranties, although the beneficiary may have been aware of them from prior conversations with the trust's attorney.

¶ 11. On January 15, 1993, Attorney Fennig filed his 1991 and 1992 accounts with the court and terminated the trust, paying certain outstanding debts, but not those to the bank that the trust had guaranteed, and transferred the trust assets to the beneficiary. He did not inform the court of the trust's guaranty, his execution of notes on behalf of the trust, his execution of corporate borrowing resolutions, or his promises to the bank to pay the outstanding loans from trust assets. Further, he did not retain any trust assets to satisfy the guaranty of the notes to the bank, despite his promises to the bank that he would do so.

¶ 12. In September 1993 the bank filed a foreclosure action against the company, the trust, and Attorney Fennig as trustee. On the basis of the trust's guaranty, a foreclosure judgment was entered at the end of January 1994 against the defendants in the amount of approximately $93,000.

¶ 13. When the bank discovered that the trust's property had been sold and the trust terminated without payment to it, the bank filed an action against Attorney Fennig and the trust in Illinois. Following trial to the court, Attorney Fennig was found to have committed fraud against the bank and the court in the course of his administration of the trust, and judgment was entered against him in the amount of $103,749. Attorney Fennig ultimately settled the bank's judgment by paying it $97,000 of his own funds.

¶ 14. The referee found that Attorney Fennig participated in actions inducing the bank to rely on trust assets to satisfy the obligations of the company to which it was lending money. He signed notes, guaranties, and corporate borrowing resolutions, and in conversations, correspondence and meetings he allowed the bank to rely on the trust as a source of

payment of the loans. He promised in writing complete and final payment from the proceeds of the sale of trust property and reassured the bank with copies of the sales agreement and down payment check, but he completed the sale and terminated the trust without paying the bank or informing the court of the trust's liability.

¶ 15. On the basis of the foregoing facts, the referee concluded that Attorney Fennig engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20:8.4(c).[1] As discipline for that misconduct, the referee recommended that Attorney Fennig be publicly reprimanded. In addition, the referee recommended that Attorney Fennig be required to pay the costs of this disciplinary proceeding.

¶ 16. In making the recommendation for a public reprimand, the referee noted that ordinarily the 60-day license suspension urged by the Board of Attorneys Professional Responsibility (Board) would have been the appropriate discipline to recommend were it not for the following mitigating factors. Attorney Fennig has not been the subject of prior discipline, is over the age of 70 and nearing the conclusion of his legal career, has an impeccable personal record to which a number of character witnesses testified, has donated significant efforts to non-profit activities, received no personal benefit by his misconduct, and was in some ways a victim of the trust's attorney. In the latter respect, the

---

[1] SCR 20:8.4 provides, in pertinent part:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

referee found that Attorney Fennig relied on representations of the trust's attorney, who died following the Illinois court proceeding but prior to the initiation of the instant disciplinary proceeding. As a consequence, the attorney's involvement in the misconduct could not be established.

¶ 17. In addition to those mitigating factors, the referee noted that the beneficiary of the trust was a "difficult" person, who disappeared after receiving the distribution of trust assets and could not be located by Attorney Fennig, and that Attorney Fennig personally paid the bank harmed by his misconduct without contribution from the trust's attorney or its beneficiary, as neither was a party in the action against the trust.

¶ 18. In response to the court's order to show cause why his license should not be suspended for 60 days as discipline for his misconduct as trustee, Attorney Fennig reiterated many of the mitigating factors addressed by the referee. In addition, he asserted that there was no finding by the Illinois court that his fraud on it in respect to the trust was intentional and that his omission of the trust's contingent liability in the accounts he filed with the court was the result of his misplaced reliance on the word of the trust's attorney. He stated further that he was unable to establish the attorney's responsibility for the failure to pay the guaranteed debt as a result of that attorney's death while litigation was in progress. In its reply to those assertions, the Board rejected Attorney Fennig's attempt to evade responsibility by claiming reliance on the word of the trust's attorney, on whom he claimed to have made repeated requests to resolve the trust's liability to the lending bank. Even if those requests had been made, the Board asserted, Attorney Fennig was not entitled to rely on that attorney's promise of action after the

first or second request did not prompt appropriate action.

¶ 19. We adopt the referee's findings of fact and conclusions of law and determine that the seriousness of Attorney Fennig's professional misconduct warrants the minimum license suspension we impose for attorney professional misconduct. Particularly serious was Attorney Fennig's fraud on the Illinois court, which signed closing papers for the trust without having been given full information by Attorney Fennig in respect to the trust's having guaranteed a corporate obligation and notice that the trust's assets had been turned over to the beneficiary without either that obligation being paid or an amount sufficient to meet any contingent liability being withheld. Accordingly, we suspend Attorney Fennig's license to practice law for 60 days.

¶ 20. We also order Attorney Fennig to pay the costs of this disciplinary proceeding. We deny his objections to the assessment of those costs on the grounds that the Board was uncooperative in providing documents requested by the referee, with resultant additional costs being incurred for the services of Board counsel, and what he terms the "punitive" effect of requiring him to pay the costs. We decline Attorney Fennig's invitation to consider the assessment of costs as a component of the discipline we impose for his professional misconduct.

¶ 21. IT IS ORDERED that the license of Robert B. Fennig to practice law in Wisconsin is suspended for 60 days, effective August 16, 1999.

¶ 22. IT IS FURTHER ORDERED that within 60 days of the date of this order, Robert B. Fennig pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a show-

ing to this court of his inability to pay the costs within that time, the license of Robert B. Fennig to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 23. IT IS FURTHER ORDERED that Robert B. Fennig comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 24. DONALD W. STEINMETZ, J., did not participate.