IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Scott F. ANDERSON, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Appellant,

v.

Scott F. ANDERSON, Respondent-Respondent.

Supreme Court

*No. 2007AP2617–D. Oral argument May 14, 2009.
—Decided May 21, 2010.*

2010 WI 39

(Also reported in 782 N.W.2d 100.)

For the complainant-appellant there were briefs by *Julie M. Scott* on behalf of the Office of Lawyer Regulation, Madison, and oral argument by *William Weigel* of the Office of Lawyer Regulation.

For the respondent-respondent there was a brief by *Scott F. Anderson* and oral argument by *Scott F. Anderson*.

¶ 1. PER CURIAM. The Office of Lawyer Regulation (OLR) appeals the portion of Referee Jonathan V. Goodman's report recommending as discipline for professional misconduct that Attorney Scott F. Anderson pay his former client $10,872.50. Attorney Anderson

stipulated to three counts of misconduct involving a lack of diligence, the failure to inform a client, and the failure to explain matters to a client. The referee recommended that if Attorney Anderson would fail to make the payment within 365 days, Attorney Anderson should remain obligated to make the payment and his license to practice law in Wisconsin should be suspended for 60 days.

¶ 2. The OLR does not seek restitution or a monetary penalty, and argues a 60–day license suspension should be imposed. Attorney Anderson objects to a license suspension and requests this court impose the payment pursuant to the referee's recommendation.

¶ 3. We uphold the referee's findings of fact and conclusions of law that Attorney Anderson committed three counts of professional misconduct. We conclude the nature of his misconduct and Attorney Anderson's disciplinary history warrant a 60–day license suspension. We do not order a monetary penalty. We further conclude Attorney Anderson shall bear the cost of this proceeding.

¶ 4. Attorney Anderson was admitted to practice law in Wisconsin in 1985. He practices in Milwaukee. He has been subject to professional discipline on three previous occasions.[1]

¶ 5. In November 2007 the OLR filed a three-count disciplinary complaint against Attorney Ander-

---

[1] In 2005 Attorney Anderson was publicly reprimanded for violations of SCR 20:1.3, former SCR 20:1.4(a), former SCR 20:1.5(b), and SCR 20:1.16(a)(3). Public Reprimand of Scott F. Anderson, No. 2005–06. In 2004 Attorney Anderson was publicly reprimanded for misconduct in three cases, including violations of former SCR 20:1.4(a), SCR 20:1.4(b), SCR 20:1.3, and SCR 20:3.4(c). Public Reprimand of Scott F. Anderson, No. 2004–05. In 1999 Attorney Anderson received a private reprimand for violations of former SCR 20:1.4(a) and SCR 20:1.3. Private Reprimand of Scott F. Anderson, No. 1999–13.

son alleging a lack of diligence and failures in communication with his former client, E.T., Jr. E.T. had been charged with three felony drug offenses and felon in possession of a firearm in Milwaukee County circuit court. As a result of these charges, U.S. Department of Justice Drug Enforcement Administration (DEA) agents seized over $48,000 from E.T.'s residence and bank accounts. In March 2005 E.T. retained Attorney Anderson to provide legal services for his defense related to the criminal prosecution and seizure of his assets.

¶ 6. In May 2005 the Milwaukee County prosecutor wrote Attorney Anderson offering to settle E.T.'s pending criminal charges. Attorney Anderson did not provide a copy of the letter to E.T. nor did he discuss with E.T. the possibility of federal charges arising from the same circumstances.

¶ 7. At Attorney Anderson's request, the Milwaukee County circuit court scheduled a suppression motion hearing for July 15, 2005, and directed Attorney Anderson to file E.T.'s brief in support of the motion by July 1, 2005. E.T. was confined to jail and was not present in court during Attorney Anderson's scheduling discussion. Between June 2, 2005, and July 14, 2005, Attorney Anderson did not file any documents pertaining to E.T.'s case nor discuss with him any defense strategies. Also, Attorney Anderson performed no research on the suppression motion until July 12, 2005; he did not prepare the motion until July 14, 2005, and did not file the motion or serve a copy on the prosecutor until July 15, 2005. Attorney Anderson never provided E.T. with a copy of the motion. Due to the late filing, the court adjourned the suppression hearing until September 26, 2005.

¶ 8. Because E.T. remained in jail, he was not in court on July 15, 2005, and Attorney Anderson did not advise E.T. what had occurred during the hearing. In August 2005 E.T. wrote to Attorney Anderson express-

ing concern with the lack of contact and failure to communicate the outcome of the July 15, 2005, hearing. E.T. requested to see Attorney Anderson immediately.

¶ 9. Attorney Anderson did not respond to E.T.'s letter and did not contact him between August 5, 2005, and September 29, 2005. On September 20, 2005, Attorney Anderson filed a notice of motion and motion to adjourn the September 26, 2005, suppression hearing. The court adjourned the suppression hearing until January 10, 2006. Attorney Anderson did not send E.T. a copy of the motion or otherwise advise him of the adjournment or the new hearing date.

¶ 10. On November 29, 2005, E.T. filed a pro se bail reduction motion and requested a hearing. Attorney Anderson had no contact with E.T. between October 3, 2005, and January 10, 2006, and took no action with respect to the motion. Due to a congested docket, the court adjourned the January 10, 2006, hearing on the suppression and pro se bail reduction motions to January 18, 2006. E.T. remained in custody and was not present in court at the January 10 adjournment.

¶ 11. On January 18, 2006, Attorney Anderson appeared by telephone to request another adjournment due to a trial in a different court. The matter was adjourned to January 20, 2006. E.T. remained in jail and did not appear in court on January 18. Attorney Anderson failed to advise him of what had transpired.

¶ 12. On January 20, 2006, Attorney Anderson moved to reduce bail, stating grounds other than those provided in E.T.'s pro se motion. Attorney Anderson did not provide E.T. with a copy of this new bail reduction motion. Attorney Anderson appeared on January 20 and argued the bail issue on E.T.'s behalf; E.T. was not brought to court. The bail reduction motions were denied and the suppression hearing was adjourned to April 20, 2006.

¶ 13. Although E.T. was brought to court for the April 20, 2006, suppression hearing, the court adjourned the hearing due to time constraints. At the May 18, 2006, adjourned hearing, E.T. once again was in court but the suppression hearing was adjourned yet again, this time to September 21, 2006, due to a co-defendant's attorney's conflict.

¶ 14. On June 2, 2006, the court denied another bail reduction motion; E.T. remained in jail and was not at the hearing. Attorney Anderson spoke with E.T. by telephone and agreed to meet with him in person to discuss his case. However, Attorney Anderson had no contact with E.T. between June 2, 2006, and September 20, 2006. On September 21, 2006, the State dismissed the Milwaukee County case because, on that day, the U.S. Attorney filed a federal criminal complaint against E.T. stemming from the same circumstances. Attorney Anderson advised E.T. on that date that the state charges had been dismissed.

¶ 15. With respect to contesting the forfeiture of more than $48,000 of E.T.'s bank accounts and cash, the DEA notified E.T. on March 22 and April 5, 2005, that certain claims must be filed with the DEA's counsel by April 26, 2005, and others must be filed by May 10, 2005. Attorney Anderson did not mail the notices contesting the forfeiture of most of the seized assets until April 28, 2005.

¶ 16. On May 13, 2005, the DEA notified Attorney Anderson that because they were received after the April 26 deadline, E.T.'s notices regarding most of the seized assets were being returned. On June 3, 2005, Attorney Anderson filed a petition for remission regarding the rejected claims, but failed to provide E.T. with copies until December 2006.

¶ 17. On June 6, 2005, the DEA sent Attorney Anderson a second notice of its seizure of $8,946 cash belonging to E.T. To contest this forfeiture, the notice required E.T. to file a claim by July 11, 2005. On July 7, 2005, Attorney Anderson sent a notice contesting the forfeiture but it was not until December 2006 that he provided E.T. a copy of the DEA's notice or the filed claim. On July 29, 2005, the U.S. Attorney filed a notice for civil forfeiture, a complaint, and verification for the forfeiture of $8,946 in cash and $1,926.50 in a bank account belonging to E.T.

¶ 18. On August 5, 2005, E.T. wrote Attorney Anderson, complaining he had not received copies of documents relating to the federal forfeiture action. Attorney Anderson did not reply. On August 10, 2005, the DEA denied Attorney Anderson's June 3, 2005, petition for remission and advised him that E.T. could file one request for reconsideration based on material not previously submitted, provided it was postmarked within ten days of Attorney Anderson's receipt of the DEA's August 10 letter.

¶ 19. On August 24, 2005, the forfeiture complaint was served upon Attorney Anderson. Attorney Anderson took no action. On October 18, 2005, the U.S. Attorney filed a motion for default judgment, which Attorney Anderson received by mail. Attorney Anderson took no action with respect to the default judgment motion. Attorney Anderson did not notify E.T. until February 2007 of the rejection of his claims for the return of the seized property or his right to reconsideration.

¶ 20. Attorney Anderson stipulated to three counts of misconduct arising from his representation of E.T.:

- *Count One.* Attorney Anderson violated SCR 20:1.3[2] by failing to file claims timely and failing to take action on his client's behalf with regard to the Complaint for Civil Forfeiture filed on July 29, 2005, or the Motion for Default Judgment filed on October 18, 2005.

- *Count Two.* Attorney Anderson violated former SCR 20:1.4(a)[3] by failing to respond to his client's reasonable requests for information and to communicate case developments to his client in a timely manner.

- *Count Three.* Attorney Anderson violated SCR 20:1.4(b)[4] by failing to explain to his client the effect of correspondence he received from the DEA and the U.S. Attorney's Notice of Complaint for Civil Forfeiture of Property, Verified Complaint for Forfeiture, Verification, Motion for Default Judgment, Judgment of Default and Forfeiture, and Application to Clerk for Entry of Judgment; failing to explain the implications of the assistant district attorney's May 4, 2005, letter; and failing to explain the implications of the State's dismissal of the Milwaukee County case, including that the case was dismissed due to the charges in federal court, and that Attorney Anderson's representation would not include representation with regard to the federal charges.

---

[2] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[3] Former SCR 20:1.4(a) (effective through June 30, 2007) provided, "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[4] SCR 20:1.4(b) provides, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

¶ 21. Because of Attorney Anderson's stipulation to the three counts of misconduct, the only issue litigated at the disciplinary hearing was the level of sanction. E.T. testified by telephone that due to the lack of communication with Attorney Anderson, he suffered stress while confined for two and one-half years in the Milwaukee County jail. E.T. testified he paid Attorney Anderson $2,500. E.T. stated he believed Attorney Anderson's caseload was too heavy to permit proper representation. E.T. said Attorney Anderson had contacted him a couple of times during the two and one-half years he was in jail. E.T. claimed the sums forfeited represented benefit payments from his military service. E.T. further testified that a few days after the state charges were dismissed, he retained separate counsel on the federal charges through the federal public defender's office. E.T. was subsequently sentenced to a lengthy term in federal prison for drug-related offenses.

¶ 22. The referee observed Attorney Anderson admitted he mishandled the forfeiture. The referee considered that Attorney Anderson had fully cooperated with the OLR and showed contrition at the disciplinary hearing, but concluded these actions did not outweigh the harm to E.T., which was Attorney Anderson's fourth disciplinary proceeding involving similar supreme court rules in six years. The referee also noted that while subject to the disciplinary proceedings resulting in his 2005 public reprimand, Attorney Anderson was engaged in similar misconduct in this matter.

¶ 23. The referee recommended that Attorney Anderson be required to compensate E.T. within 365 days for the $10,872.50 forfeited by the DEA. The

referee recommended that if Attorney Anderson would fail to make the payment, Attorney Anderson should remain obligated to make the payment and his license to practice law should be suspended for 60 days. The referee also recommended the full costs of this proceeding be imposed and, if Attorney Anderson would fail to pay the costs within 180 days, his license be suspended until costs are paid in full.

¶ 24. The OLR objects to the recommended stayed suspension dependent upon a monetary sanction. The OLR states it does not seek restitution of forfeited sums because the funds were not in Attorney Anderson's direct control. The OLR says the forfeited funds constitute incidental or consequential damages resulting from Attorney Anderson's misconduct, but claims that reimbursement fails to achieve the goals of attorney discipline. The OLR contends that a stayed suspension does not protect the public or legal system from further misconduct, nor would it impress upon Attorney Anderson the seriousness of his misconduct.

¶ 25. Attorney Anderson responds that the recommended sanction is a severe financial burden, but he does not challenge the amount. He argues his misconduct does not involve dishonesty and, therefore, a license suspension is not justified. He states he is painfully aware of the seriousness of his misconduct and requests the court impose the referee's recommended sanction.[5]

---

[5] Subsequent to oral argument, the clerk of court received an unsolicited letter from an attorney who wished to convey to the court his thoughts regarding this disciplinary matter. The attorney attached to his letter copies of court records in E.T.'s federal prosecution. Attorney Anderson does not object to the submission. The OLR objects to this court's consideration of the letter on the ground that it amounts to an attempt to influence the court with opinion testimony, which was not offered at the

¶ 26. A referee's findings of fact will not be over-turned unless clearly erroneous. *In re Disciplinary Proceedings Against Carroll,* 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718. This court determines the level of discipline that would be appropriate under the particular circumstances, independent of the referee's recommendation but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686. In determining the level of discipline, we consider the seriousness of the misconduct, the need to protect the public, the courts, and the legal system from repetitive misconduct, as well as the need to deter other attorneys from engaging in similar misconduct. *In re Disciplinary Proceedings Against Arthur,* 2005 WI 40, ¶ 78, 279 Wis. 2d 583, 694 N.W.2d 910.

¶ 27. We adopt the referee's findings of fact and conclusions of law as to Attorney Anderson's professional misconduct. We do not adopt the referee's recommendation as to discipline. We conclude Attorney Anderson's disciplinary history and the nature of his misconduct warrant a 60–day license suspension.[6]

disciplinary hearing when the writer could have been available for examination. The OLR does not object to the court taking judicial notice of the copies of E.T.'s federal court records.

We sustain the OLR's objection. This court does not find facts, but rather reaches its conclusion based on the record made before the referee. *See* Wis. Stat. §§ 751.05; 751.09. An argument by a person not a party to the proceeding is made through motion practice. *See* Wis. S. Ct. IOP II.B. 6.c. (October 19, 2007). On the basis of the OLR's objection, the letter will not be received for the court's consideration. Because neither party objects to the copies of the federal court records, they will be received.

[6] Because the stipulation was not entered into pursuant to SCR 22.12, additional proceedings are not required when the

¶ 28. Contrary to Attorney Anderson's suggestion, not all cases imposing a license suspension involve dishonesty. *See In re Disciplinary Proceedings Against Whitnall,* 230 Wis. 2d 194, 195–96, 600 N.W.2d 910 (1999). Attorney Whitnall had been disciplined three previous times. *See id.* His misconduct involved a lack of diligence and cooperation with the OLR investigation, resulting in a 60–day suspension. Also, in the case of *In re Disciplinary Proceedings Against Jones,* 176 Wis. 2d 140, 499 N.W.2d 674 (1993), after Attorney Jones had been disciplined five previous times, he was found to have violated his duties of diligence and communication. *See Jones,* 176 Wis. 2d at 141, 143. His license was suspended 60 days. *Id.*

¶ 29. We are not persuaded a monetary penalty would satisfy the objectives of attorney discipline. Attorney Anderson has demonstrated a pattern of misconduct; this is his fourth disciplinary proceeding involving similar misconduct. We note Attorney Anderson's expressions of remorse and his cooperation in these proceedings. We conclude, nonetheless, a license suspension for a minimal period is called for under the circumstances. Attorney Anderson must be impressed with his professional obligation to pursue diligently the interests of those persons who rely on him to protect and further their interests in the legal system. We conclude progressive discipline in the form of a 60–day license suspension is warranted.

¶ 30. The OLR does not seek restitution and the record lacks documentary evidence as to the source of the forfeited funds; we decline to order compensation to the client in this instance.

---

court rejects the recommended sanction. *In re Disciplinary Proceedings Against Peterson,* 2006 WI 41, ¶ 10, 290 Wis. 2d 74, 713 N.W.2d 101.

¶ 31. We order Attorney Anderson to pay the costs of this proceeding within 90 days of the date of this order. Under SCR 22.24(1m),[7] the court's general policy is to impose costs on the respondent. To award less than full costs, the court must find "extraordinary circumstances." *Id.* Attorney Anderson has not objected to costs and has not claimed extraordinary circumstances to justify a reduction or deferment of his obligation to pay costs.[8]

¶ 32. IT IS ORDERED that the license of Scott F. Anderson to practice law in Wisconsin is suspended for a period of 60 days, effective June 28, 2010.

¶ 33. IT IS FURTHER ORDERED that within 90 days of the date of this order, Scott F. Anderson pay to the Office of Lawyer Regulation the costs of this proceeding. If costs are not paid within the time specified and absent a showing of his inability to pay the costs, Scott F. Anderson's license to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 34. IT IS FURTHER ORDERED that Scott F. Anderson shall comply with SCR 22.26 regarding the duties of a person whose license to practice law in Wisconsin has been suspended.

---

[7] SCR 22.24(1m) reads, in part:

> The court's general policy is that upon a finding of misconduct it is appropriate to impose all costs, including the expenses of counsel for the office of lawyer regulation, upon the respondent. In cases involving extraordinary circumstances the court may, in the exercise of its discretion, reduce the amount of costs imposed upon a respondent. . . .

[8] On May 27, 2009, the OLR filed a statement seeking costs of $5,863.96.