# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2014AP482-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Gerald P. Boyle, Attorney at Law: |

Office of Lawyer Regulation,
            Complainant-Respondent,
      v.
Gerald P. Boyle,
            Respondent-Appellant.

---

DISCIPLINARY PROCEEDINGS AGAINST BOYLE

---

| | |
|---|---|
| OPINION FILED: | December 23, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 12, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ABRAHAMSON, J., dissents. (Opinion Filed) |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant, there were briefs by *Gerald P. Boyle*, and Boyle, *Boyle & Boyle, S.C.*, Milwaukee, and oral argument by *Gerald P. Boyle*.


For the complainant-respondent, there was a brief by *Robert G. Krohn*, and *Roethe Pope Roeth, LLP*, Edgerton, and oral argument by *Robert G. Krohn*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP482-D

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Gerald P. Boyle, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant-Respondent,**

  **v.**

**Gerald P. Boyle,**

        **Respondent-Appellant.**

**FILED**

**DEC 23, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. Attorney Gerald P. Boyle appeals the report of Hannah C. Dugan, referee, who recommended that this court suspend Attorney Boyle's Wisconsin law license for 60 days; require him to complete six continuing legal education (CLE) credits in law office management and/or trust account practices; require him to provide quarterly trust account reports to the Office of Lawyer Regulation (OLR) for one year; and require him to pay the full costs of this disciplinary

proceeding. The referee found that Attorney Boyle committed all six charged counts of misconduct, which included trust account violations; a failure to explain in writing the nature of his proposed fee and subsequent fee changes, the purpose and effect of the advanced fees he accepted, and the scope of the legal services he would provide in exchange for those fees; a failure to promptly comply with a client's reasonable requests for information; and a failure to act with reasonable diligence and competence.

¶2 We adopt the referee's findings of fact and conclusions of law. We conclude that the referee's reasoning with respect to discipline is persuasive. Accordingly, this court concludes that a 60-day suspension of Attorney Boyle's license to practice law in Wisconsin is an appropriate sanction for his violations. We also agree with the referee's recommendations to require Attorney Boyle to provide quarterly trust account reports to the OLR for one year; to require him to complete six CLE credits in law office management and/or trust account practices; and to require him to pay the full costs of this disciplinary proceeding, which total $24,917.89 as of November 2, 2015.

¶3 Attorney Boyle has held a Wisconsin law license since 1962. He has been privately reprimanded three times.

¶4 In 2002, Attorney Boyle was privately reprimanded for violating Supreme Court Rule (SCR) 20:1.3, SCR 20:1.4(b), and SCR 20:1.16(d) for failing to act diligently with respect to a criminal defendant's request for post-conviction relief, failing

2

to explain matters to the client so that the client could make informed decisions, and failing to return the client's file. See Private Reprimand 2002-09.

¶5 In 2009, Attorney Boyle was privately reprimanded for violating SCR 20:1.3, SCR 20:1.4(a), SCR 20:1.16(d), and former SCR 20:5.1(a) and (b). The violations involved multiple cases assigned to associate attorneys working for Attorney Boyle. The associates failed to take any meaningful action on those cases. After Attorney Boyle became aware of significant problems in the law firm's representation, he failed to take remedial action on the cases. Attorney Boyle also delayed returning the file and unearned fees of one of the clients for more than two years. See Private Reprimand 2009-10.

¶6 In 2012, Attorney Boyle was privately reprimanded for violating SCR 20:1.5(b)(1) and (2) for failing to prepare a written fee agreement and failing to explain the purpose and effect of any advanced fee received. See Private Reprimand 2012-23.

¶7 In its underlying complaint in this case, the OLR charged Attorney Boyle with six counts of misconduct. Attorney Boyle denied the misconduct charges in his answer.

¶8 Counts One through Five arise out of Attorney Boyle's representation of D.P. in a consumer law/fraud matter. D.P. collects John Lennon memorabilia. D.P. paid over $191,000 to a gallery in Hawaii for various pieces of John Lennon memorabilia, including drawings and a microphone supposedly used by Lennon. D.P. paid over $95,000 to a gallery in Florida for various

3

drawings by Lennon. D.P. paid over $21,000 to a gallery in New York for a drawing and handwritten letter by Lennon.

¶9 D.P. came to suspect the authenticity of the purchases. In 2008 and early 2009, D.P. learned that that the purchased items were counterfeit and/or not resalable.

¶10 D.P. retained a Waukesha County attorney who successfully recovered the amount paid to the Hawaii gallery for the microphone supposedly used by Lennon. This recovery still left over $131,000 in Lennon drawings sold by the Hawaii gallery that D.P. suspected were inauthentic.

¶11 D.P. consulted with an ink specialist to evaluate the authenticity of his collection of Lennon drawings. The ink specialist believed that many of the drawings were fraudulent, as many of the inks used for the drawings were not commercially available on the purported dates of the drawings. The ink specialist referred D.P. to Attorney Boyle, with whom the specialist had worked on a different, earlier matter.

¶12 In November 2009, D.P. sought legal representation from Attorney Boyle regarding all of the remaining purchases. Attorney Boyle initially told D.P. that he would handle the purchases with all three galleries for a flat fee of $25,000. Attorney Boyle did not prepare a written fee agreement, nor did he communicate in writing the purpose and effect of any advanced fees received from D.P.

¶13 In mid-November 2009, D.P. charged $10,000 to his credit card in partial payment of Attorney Boyle's $25,000 advanced fee. Attorney Boyle did not deposit the $10,000

4

advanced fee payment into his client trust account but instead deposited the payment into his law firm's operating account.

¶14 Not long thereafter, Attorney Boyle told D.P. that he would need more money to handle the case(s) against all three galleries. In January 2010, Attorney Boyle asked D.P. to send $35,000 immediately, and told D.P. that he would need another $35,000 in about six weeks. D.P. agreed to the proposal and promptly gave Attorney Boyle a cashier's check for $35,000. Attorney Boyle did not deposit the $35,000 advanced fee payment into his client trust account but instead deposited the payment into his law firm's operating account. Attorney Boyle did not prepare a written fee agreement modifying his original oral fee agreement with D.P., nor did he communicate in writing to D.P. any changes in the basis or rate of the fee. Attorney Boyle also did not explain in writing the purpose and effect of the $35,000 advanced fee payment.

¶15 In January 2011, D.P. paid Attorney Boyle another $20,000 to continue representation against the three galleries. Attorney Boyle did not deposit the $20,000 advanced fee payment into his trust account but instead deposited the payment into his law firm's operating account. As with the payments twice before, Attorney Boyle did not prepare a written fee agreement, nor did he communicate in writing to D.P. any changes in the basis or rate of the fee. Attorney Boyle also did not explain in writing the purpose and effect of the $20,000 advanced fee payment.

5

¶16 In December 2009, Attorney Boyle wrote letters to two of the three galleries (the Hawaii and New York galleries), alleging that the Lennon sketches that D.P. had purchased were forgeries and stating that D.P. wanted to recover his investment. In January 2010, Attorney Boyle wrote the Hawaii and New York galleries again, noting that he had not received any response from them. Attorney Boyle asked for the names of their respective law firms and the existence of any insurance coverage.

¶17 In May 2010, D.P. sought to discontinue Attorney Boyle's representation due to frustration over the pace at which the matters were progressing. Attorney Boyle ultimately convinced D.P. to allow him to stay on the case.

¶18 In early June 2010, Attorney Boyle arranged for another lawyer, outside of his firm, to meet with D.P. and write a memo discussing potential lawsuits against one or more of the three galleries. Attorney Boyle also met with the ink specialist with whom D.P. had consulted and who had referred D.P. to Attorney Boyle.

¶19 In June 2010, Attorney Boyle informed D.P. that the statute of limitations for his claim under Wis. Stat. § 100.18 (the "Deceptive Trade Practices Act" or "DTPA") had expired as to 10 of the 30 items he had purchased. The following day, D.P. noted in an email to Attorney Boyle that the statute of limitations would expire for additional items on July 3, 2010.

¶20 On July 2, 2010, Attorney Boyle filed a single lawsuit against the Hawaii gallery in the United States District Court

for the Eastern District of Wisconsin. The lawsuit listed six causes of action, including the DTPA cause of action.

¶21 Certain defendants to the Eastern District lawsuit filed summary judgment motions that slowed the progress of the lawsuit. D.P. sent Attorney Boyle multiple emails seeking information about the case. Attorney Boyle and/or his firm responded minimally to these requests. Attorney Boyle cancelled various meetings D.P. had arranged, and failed to return many of D.P.'s phone calls.

¶22 At Attorney Boyle's request, D.P. began an effort to obtain print copies of his phone records for all outgoing and incoming long-distance calls since 2007. Attorney Boyle had told D.P. these records were critical to obtain personal jurisdiction of the out-of-state galleries. When the phone company informed D.P. that its policy required that the records could be obtained only by subpoena, D.P. asked Attorney Boyle in a July 2010 email to request a subpoena. D.P. asked Attorney Boyle about the status of the subpoena in two subsequent emails sent that same month. Attorney Boyle did not respond to D.P.'s email inquiries. After continued inquiries from D.P., Attorney Boyle's daughter (Attorney Bridget Boyle) stated in an August 2010 email to D.P. that she was in the process of preparing the subpoena, but needed additional information.

¶23 In March 2011, D.P. renewed his request that Attorney Boyle subpoena telephone records from D.P.'s telephone carrier. After multiple unfulfilled promises by the Boyle law firm staff, D.P. received a copy of an unsigned subpoena that Attorney

7

Bridget Boyle intended to file with the court, but never did pursuant to Attorney Boyle's instructions. Attorney Bridget Boyle never consulted with or informed D.P. about the fact that she would not be filing a subpoena request with the court.

¶24 In 2011, D.P. tried to resolve his claims with the Florida gallery. D.P. learned that the gallery planned to cease operations and had filed a Voluntary Assignment for the Benefit of Creditors. Attorney Boyle referred D.P. to an attorney in Florida. Attorney Boyle forwarded fees to the Florida attorney to assist D.P. with his legal claim as a creditor of the Florida gallery. D.P. eventually settled his claims with the gallery, with the help of the Florida attorney.

¶25 In February 2012, D.P. settled his dispute with the New York gallery through subsequently-retained counsel and without Attorney Boyle's involvement. Although D.P. recovered the cost of his purchases, he did not recover attorney's fees or other costs.

¶26 In April 2012, D.P. filed a grievance with the OLR against Attorney Boyle.

¶27 In May 2012, D.P. hired a different lawyer to complete the federal litigation involving the Hawaii gallery. This lawyer settled the case in September 2012. The settlement recouped D.P.'s costs in buying the disputed items from the Hawaii gallery but did not recoup any attorney's fees or costs incurred by D.P.

¶28 The OLR's complaint alleged the following counts of misconduct arising out of Attorney Boyle's work on the D.P. matter:

- Count One: By accepting advanced fee payments in the amount of $10,000, $35,000, and $20,000 in anticipation of providing legal representation to D.P., and by failing to deposit those payments into his trust account, instead depositing the money into his law firm operating account, Attorney Boyle violated SCR 20:1.15(b)(4).[1]

- Count Two: By accepting advanced fee payments from D.P. in the amount of $10,000, $35,000, and $20,000, by failing to communicate in writing the scope of the representation, the basis or rate of the fee, and the purpose and effect of the advanced fee payments, and, in addition, by making changes to the fee agreement on multiple occasions without the benefit of a writing, Attorney Boyle, in each instance, violated SCR 20:1.5(b)(1) and (2).[2]

---

[1] SCR 20:1.15(b)(4) provides:

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[2] SCR 20:1.5(b)(1) and (2) provide:

(continued)

- Count Three:  By failing to respond to D.P.'s multiple requests for information regarding the subpoena for telephone records, Attorney Boyle violated SCR 20:1.4(a)(4).[3]

- Count Four:  By failing to file a lawsuit prior to the expiration of the statute of limitations under the DTPA for multiple fraudulent sketches purchased by D.P., and, in addition, by failing to take meaningful action on behalf of D.P. to recover from the New York gallery, Attorney Boyle violated SCR 20:1.3.[4]

---

(1) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate as in the past. If it is reasonably foreseeable that the total cost of representation to the client, including attorney's fees, will be $1000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

(2) If the total cost of representation to the client, including attorney's fees, is more than $1000, the purpose and effect of any retainer or advance fee that is paid to the lawyer shall be communicated in writing.

[3] SCR 20:1.4(a)(4) provides that a lawyer shall "promptly comply with reasonable requests by the client for information."

[4] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

10

- Count Five: By allowing the statute of limitations under the DTPA to expire for certain fraudulent sketches purchased by D.P., therefore foreclosing the possibility of D.P. recovering attorney's fees incurred in recouping his losses for those purchases,[5] Attorney Boyle failed to provide competent representation to D.P., in violation of SCR 20:1.1.[6]

¶29 The sixth and last count in the OLR's complaint concerns Attorney Boyle's representation of R.G. Authorities charged R.G. with a variety of criminal counts. R.G. retained Attorney Boyle shortly thereafter. R.G. paid $9,500 to Attorney Boyle's law firm in anticipation of Attorney Boyle providing legal representation. Attorney Boyle did not deposit the $9,500 advanced fee payment into his client trust account but instead deposited the payment into his law firm's operating account. A few weeks later, R.G. made a second payment of $9,500 to Attorney Boyle's law firm in anticipation of Attorney Boyle's future legal representation. Attorney Boyle again did not deposit the $9,500 advanced fee payment into his client trust account but instead deposited the payment into his law firm's operating account.

---

[5] The DTPA allows a successful plaintiff to recover reasonable attorney fees. See Wis. Stat. § 100.18(11)(b)2.

[6] SCR 20:1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

11

¶30 The OLR's complaint alleged the following misconduct count arising out of Attorney Boyle's work on the R.G. matter:

- Count Six: By failing to deposit in his trust account the two $9,500 advanced fee payments from R.G., paid in anticipation of Attorney Boyle providing legal representation to R.G., and instead depositing the payments into his law firm operating account, Attorney Boyle violated SCR 20:1.15(b)(4).

¶31 Following a two-day hearing on the complaint, the referee submitted a report containing her findings of fact and conclusions of law, as well as her recommendations for discipline. The referee determined that the OLR had proven misconduct in all six counts charged. The referee found that, when Attorney Boyle failed to deposit D.P.'s and R.G.'s advanced fee payments into his trust account (see Counts One and Six), he knew fee rules existed but simply chose to disregard them. The referee likewise found that, with respect to Count Two, Attorney Boyle knew that written fee agreements were necessary but nevertheless failed to prepare any writing that explained to D.P. the nature of his proposed fee and subsequent fee changes, the purpose and effect of the advanced fee payments he accepted, and the scope of the legal services he would provide in exchange for those fees. In the referee's view, this absence of a written agreement contributed to "wildly differing testimony" by Attorney Boyle and D.P. about the nature and goals of Attorney Boyle's representation.

¶32 Concerning Attorney Boyle's lack of responsiveness to D.P.'s inquiries regarding the subpoena for his telephone records (see Count Three), the referee described as "[m]ore appalling than unpersuasive" Attorney Boyle's explanation that he did not believe the subpoena was necessary, and that he and his staff members were essentially humoring D.P. into thinking that they were addressing the issue, when in fact they were not.

¶33 Regarding the diligence and competence with which Attorney Boyle pursued D.P.'s disputes with the three galleries (see Counts Four and Five), the referee observed that Attorney Boyle treated the matters as criminal fraud matters and conspiracies to be undone instead of as consumer matters. He did not withdraw from the representation despite his apparent belief that he could not resolve them through negotiation or litigation. He filed a federal lawsuit against the Hawaii gallery after some of the claims had become time-barred. He did not sue the New York gallery or engage in settlement talks. He did not monitor the status of the Florida gallery; it was D.P. who discovered the pending bankruptcy and the need to file a creditor claim.

¶34 After determining that the OLR had proven by clear and convincing evidence all six counts of misconduct as alleged in its complaint, the referee turned to an appropriate sanction to be recommended for Attorney Boyle's misconduct. In reaching her sanction recommendation, the referee cited a number of cases, two of which she believed were particularly analogous to the instant matter: In re Disciplinary Proceedings Against

13

Anderson, 2010 WI 39, 324 Wis. 2d 627, 782 N.W.2d 100, and In re Disciplinary Proceedings Against Theobald, 2010 WI 102, 329 Wis. 2d 1, 786 N.W.2d 834. In Anderson, a lawyer received a 60-day suspension for a lack of diligence related to his handling of his client's criminal defense, failing to respond to his client's reasonable requests for information and to communicate case developments to his client in a timely manner, and failing to explain matters to his client. In Theobald, a lawyer received a 60-day suspension for a lack of diligence related to her handling of her client's bankruptcy matter, and failing to respond to her client's requests for information regarding the status of her bankruptcy.

¶35 The referee noted that a variety of aggravating and mitigating factors were relevant to her recommendation on discipline. As aggravating factors, the referee pointed out that Attorney Boyle has been disciplined previously; showed a pattern of misconduct related to law office mismanagement; committed multiple offenses; and refused to acknowledge the wrongful nature of his conduct——all despite having substantial experience in the law. As mitigating factors, the referee noted that Attorney Boyle did not display a dishonest or selfish motive; generally cooperated with the disciplinary proceedings; and enjoys a good reputation in the profession.

¶36 The referee ultimately recommended a 60-day suspension, as the OLR requested in its complaint and post-hearing briefing. The referee also recommended that Attorney Boyle be required to complete six CLE credits in law office

14

management and/or trust account practices, and to provide quarterly trust account reports to the OLR for one year to monitor his use of his firm's trust accounts. Finally, the referee recommended the imposition of full costs.

¶37 Attorney Boyle appeals. As to Counts One and Six, Attorney Boyle conceded the alleged misconduct in his briefing and oral argument to this court. We find that his concessions are supported by the record. Attorney Boyle accepted $65,000 in advanced fee payments from D.P. and $19,000 in advanced fee payments from R.G., without depositing them in his trust account and without properly complying with the alternative fee placement provisions permitted by SCR 20:1.15(b)(4m).[7] These are clear rule violations.

---

[7] SCR 20:1.15(b)(4m) (Alternative protection for advanced fees) provides:

> A lawyer who accepts advanced payments of fees may deposit the funds in the lawyer's business account, provided that review of the lawyer's fee by a court of competent jurisdiction is available in the proceeding to which the fee relates, or provided that the lawyer complies with each of the following requirements:
>
> a. Upon accepting any advanced payment of fees pursuant to this subsection, the lawyer shall deliver to the client a notice in writing containing all of the following information:
>
> 1. the amount of the advanced payment;
>
> 2. the basis or rate of the lawyer's fee;
>
> 3. any expenses for which the client will be responsible;

(continued)

15

4. that the lawyer has an obligation to refund any unearned advanced fee, along with an accounting, at the termination of the representation;

5. that the lawyer is required to submit any unresolved dispute about the fee to binding arbitration within 30 days of receiving written notice of such a dispute; and

6. the ability of the client to file a claim with the Wisconsin lawyers' fund for client protection if the lawyer fails to provide a refund of unearned advanced fees.

b. Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following:

1. a final accounting, or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment with a refund of any unearned advanced fees;

2. notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide written notice of the dispute to the lawyer within 30 days of the mailing of the accounting; and

3. notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

c. Upon timely receipt of written notice of a dispute from the client, the lawyer shall attempt to resolve that dispute with the client, and if the dispute is not resolved, the lawyer shall submit the dispute to binding arbitration with the State Bar Fee Arbitration Program or a similar local bar association program within 30 days of the lawyer's receipt of the written notice of dispute from the client.

(continued)

16

¶38 Attorney Boyle also conceded in his briefs to this court the misconduct alleged in Count Two. Specifically, he conceded that he did not explain in writing to D.P. the scope of his representation, the basis or rate of his fee, the changes to his fee, or the purpose and effect of the advanced fee payments he had received. As with Counts One and Six, we find that this concession is supported by the record.

¶39 Having conceded Counts One, Two, and Six, Attorney Boyle's arguments necessarily focus on the remaining counts——Counts Three, Four, and Five, all of which concern the D.P. matter. We address each in turn.

¶40 As explained above, Count Three alleges that Attorney Boyle violated SCR 20:1.4(a)(4) by failing to promptly comply with D.P.'s reasonable requests for information regarding the subpoena for telephone records. Attorney Boyle denies any misconduct because, he claims, his firm initially told D.P. that the subpoena request was being worked on, and later informed him that it would be inadvisable to request a subpoena because it might encourage opposing counsel to make a venue challenge. Attorney Boyle also claims that D.P.'s requests for information about the subpoena were infrequent, and their significance was diluted by his many inquiries on other subjects.

---

    d. Upon receipt of an arbitration award requiring the lawyer to make a payment to the client, the lawyer shall pay the arbitration award within 30 days, unless the client fails to agree to be bound by the award of the arbitrator.

¶41 The problem with Attorney Boyle's argument is that it runs counter to the referee's factual findings. We may overturn the referee's factual findings only if those findings are clearly erroneous or, put more colorfully, if they "'strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.'" United States v. Di Mucci, 879 F.2d 1488, 1494 (7th Cir. 1989) (citation omitted). The referee chose to believe D.P.'s version of events; i.e., that D.P. made many unheeded inquiries regarding the subpoena; that Attorney Boyle had a dismissive attitude about D.P. seeking information about the subpoena; that D.P. was misled into thinking that Attorney Bridget Boyle had filed the subpoena request when in fact she had not; and that no one from the Boyle firm informed D.P. that Attorney Boyle had determined the subpoena request should not be filed. It is not our place to reappraise the evidence unless it plainly fails to support the findings of the referee——and that is not the case here. These findings easily support a violation of SCR 20:1.4(a)(4).

¶42 We turn next to Count Four, which alleges that Attorney Boyle violated SCR 20:1.3 by failing to diligently pursue D.P.'s claims. Attorney Boyle asserts that in order for the OLR to prevail on Count Four, the court must determine, as he writes in his brief, "that D.P. would have prevailed on the viable causes of actions against galleries for violations of DTPA. If this is not proven, there can be no violations found . . . ." Thus, Attorney Boyle writes, the OLR needed to prove that the memorabilia in question was fraudulent; that the three

18

out-of-state galleries had sufficient contacts with Wisconsin to support jurisdiction here in a lawsuit alleging DTPA claims, or if not, that the galleries' home states would have allowed similar claims; and finally, that D.P. would have been "guaranteed success and full recovery under the DTPA." Without such proof, Attorney Boyle argues, the OLR cannot prevail.

¶43 But that is not true. Attorney Boyle confuses the standard for a legal malpractice claim with the standard for a lawyer misconduct claim. To prevail on a legal malpractice claim, a plaintiff must prove duty, breach, causation, and damages. See Lewandowski v. Continental Cas. Co., 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979). To establish causation and damages in a legal malpractice action, a plaintiff must prove that, but for the attorney's negligence, the plaintiff would have prevailed on the underlying litigation. Id. As a practical matter, this standard requires the plaintiff to prove a case-within-a-case; i.e., that the plaintiff would have prevailed on the merits of the underlying litigation. See Glamann v. St. Paul Fire & Marine Ins. Co., 144 Wis. 2d 865, 870, 424 N.W.2d 924 (1988). That is the standard that Attorney Boyle claims must be applied here.

¶44 The standard of proof in a lawyer disciplinary matter, however, is much different. Whereas the goal of a legal malpractice action is to put clients in the position they would have occupied had the attorney not been negligent, the goal of a disciplinary proceeding is something else entirely: to protect the public, the courts, and the legal profession from attorneys

19

who fail to meet minimum standards of conduct. See In re Disciplinary Proceedings Against Harman, 137 Wis. 2d 148, 151, 403 N.W.2d 459 (1987). "It is not the purpose of lawyer discipline," we have noted, "to make whole those harmed by attorney misconduct." Id. Thus, to prove misconduct, the OLR need not prove causation and damages; i.e., to prove a case-within-a-case. See id. Rather, the OLR must show by clear, satisfactory, and convincing evidence that the respondent attorney engaged in the alleged misconduct, see SCR 22.16(5)——which, according to Count Four, was Attorney Boyle's failure to act with reasonable diligence in representing D.P.

¶45 The referee's findings readily support a determination that Attorney Boyle failed to act with reasonable diligence in representing D.P. The duty of diligence requires that the lawyer "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." SCR 20:1.3, ABA Comment 1. In stark contrast to these obligations, the referee found, among other things, that Attorney Boyle failed to file suit before many of D.P.'s claims became time-barred; failed to advance D.P.'s interests through arbitration or settlement; and failed to explain to D.P. the rationale (if any) for his lack of action.

¶46 As a defense, Attorney Boyle argues on appeal that he could not have advanced D.P.'s claims more than he did because the claims were borderline-frivolous. If that is so, however, then Attorney Boyle had a responsibility to thoroughly explain his position to D.P. The referee found that he did not do so.

20

What Attorney Boyle did, instead, was to continue to nominally represent D.P. while allowing certain claims to stagnate and others to expire altogether. That is not "diligence" as our rules define it.

¶47 We move then to Count Five, which alleges that, by allowing the statute of limitations under the DTPA to expire for certain fraudulent sketches purchased by D.P., Attorney Boyle failed to provide competent representation to D.P. in violation of SCR 20:1.1. As he did with Count Four, Attorney Boyle defends against Count Five by claiming that the OLR failed to prove misconduct because it did not show that D.P. would have succeeded on the DTPA claims that Attorney Boyle did not litigate.

¶48 As we discussed above, Attorney Boyle misunderstands the applicable standard of proof. The OLR need not prove that, but for Attorney Boyle's misconduct, D.P. would have prevailed on the underlying litigation. This must especially be true when the misconduct being alleged is a lack of competence; i.e., a claim that the respondent lawyer failed to show the necessary knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. See SCR 20:1.1. It would be an odd disciplinary system indeed were this court to place an underworked case at the OLR's feet and demand that it prove the underlying merits as a prerequisite to misconduct findings. No lawyer should be allowed to transform his or her own failure to advance a case into a shield against a misconduct charge.

21

¶49 The referee's findings readily support a determination that Attorney Boyle failed to provide competent representation to D.P. Among other things, Attorney Boyle showed a lack of knowledge and skill in treating D.P.'s claims as criminal matters and conspiracies to be undone instead of as consumer matters. He also showed a lack of thoroughness and preparation through his complacency toward protecting the timeliness and recoverability of D.P.'s claims; it was D.P., not Attorney Boyle, who sounded the alarm on statute of limitations problems and the impending bankruptcy of the Florida gallery.

¶50 Similar to his argument as to Count Four, Attorney Boyle argues on appeal that his failure to further advance D.P.'s claims cannot be deemed to show a lack of competence given that many of D.P.'s claims were borderline-frivolous. But as explained above, this argument carries little weight. Part of being a competent lawyer is letting clients know if, and why, certain claims or defenses are unsustainable and should be dropped. There are no factual findings to suggest that Attorney Boyle did so here. Competent lawyering does not include leading a client into thinking that their claims or defenses are being fully represented when in fact they are not.

¶51 As for the level of discipline, we agree with the referee that a 60-day suspension of Attorney Boyle's law license is appropriate. As stated above, Attorney Boyle concedes the misconduct alleged in Counts One, Two, and Six, which generally concern his lack of a written fee agreement and his deposit of D.P.'s and R.G.'s advanced fee payments into his business

account without properly using the alternative fee placement provisions permitted by SCR 20:1.15(b)(4m). As also explained above, we agree with the referee that Attorney Boyle failed to promptly comply with D.P.'s reasonable requests for information, and failed to act with reasonable diligence and competence in representing D.P. These six counts of misconduct, when considered together with Attorney Boyle's three prior private reprimands, easily justify a 60-day suspension. See, e.g., In re Disciplinary Proceedings Against Hahnfeld, 2007 WI 123, 305 Wis. 2d 48, 739 N.W.2d 280 (60-day suspension for attorney's misconduct, which included failing to act with reasonable diligence in representing clients, failing to keep clients informed, and failing to explain the basis or rate of fees); see also In re Disciplinary Proceedings Against Kasprowicz, 2007 WI 67, 301 Wis. 2d 82, 732 N.W.2d 427; (60-day suspension for attorney's failure to act with reasonable diligence and to communicate with client in one case, failure in another case to respond to numerous court orders and directives, failure in both cases to deposit advanced fees into his client trust account, and failure to cooperate with disciplinary investigation); see also In re Disciplinary Proceedings Against Harris, 2010 WI 9, 322 Wis.2d 364, 778 N.W.2d 154 (60-day suspension for failure to keep a client informed as to the status of a matter and failure to keep a client informed and respond to a client's request for information).

¶52 We pause to remark briefly on Attorney Boyle's claim that the length of his career (he has practiced since 1962) and

23

the fact that he is nearing retirement should mitigate against a suspension of any length. We disagree. Attorney Boyle has been privately reprimanded three times, and our policy of progressive discipline supports a suspension of his law license for the 60-day minimum period. In addition, our precedent shows that age is not necessarily a mitigating factor. See In re Disciplinary Proceedings Against Fennig, 227 Wis. 2d 379, 595 N.W.2d 710 (1999) (60-day suspension, rather than public reprimand, imposed for over 70-year-old attorney with no disciplinary history). As we explained in In re Disciplinary Proceedings Against Carter, 2014 WI 126, 359 Wis. 2d 70, 856 N.W.2d 595, "[t]his court cannot countenance a rule that would soft-pedal the discipline owed to attorneys" who commit misconduct "so long as they do so in the twilight of their careers." Id., ¶ 26.

¶53 Attorney Boyle does not specifically challenge the referee's recommendation that he be required to complete six CLE credits in law office management and/or trust account practices and to provide quarterly trust account reports to the OLR for one year to monitor his use of the law firm's trust accounts. This court has imposed similar requirements in the past. See, e.g., In re Disciplinary Proceedings Against Steinberg, 2007 WI 113, 304 Wis. 2d 577, 735 N.W.2d 527. We do so again here.

¶54 We turn, finally, to the monetary aspects of the referee's recommendation. Attorney Boyle does not raise any

24

objection to the imposition of costs. We impose them in full. The OLR does not seek restitution. None is ordered.

¶55 IT IS ORDERED that the license of Gerald P. Boyle to practice law in Wisconsin is suspended for a period of 60 days, effective January 22, 2016.

¶56 IT IS FURTHER ORDERED that, for a period of one year, Gerald P. Boyle must file quarterly trust account reports with the Office of Lawyer Regulation as a condition of his practice of law.

¶57 IT IS FURTHER ORDERED that Gerald P. Boyle attend a minimum of six hours of continuing legal education in law office management and/or trust account practices.

¶58 IT IS FURTHER ORDERED that within 60 days of the date of this order, Gerald P. Boyle shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶59 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

¶60 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I write in dissent in several attorney discipline cases because I have concerns about the discipline imposed.

¶61 In the instant case, the referee found (and the court agreed) that the respondent attorney committed all six charged offenses (including two trust account violations). The discipline: a 60-day suspension plus conditions. The respondent attorney had received three private reprimands between 2002 and 2012.

¶62 How can this level of discipline be justified in light of OLR v. Crandall, 2015 WI 111, ___ Wis. 2d ___, ___ N.W.2d ___? Attorney Crandall is on his fifth brush with the OLR in the seven years since 2008. He has been disciplined four times previously: a three-month suspension, a public reprimand, a 30-day suspension, and a five-month suspension. It does not appear that the previous discipline had the impact the court intended. Nevertheless, the court now imposes another public reprimand. Yet Attorney Boyle receives a 60-day suspension, even though his disciplinary history is much less serious than Attorney Crandall's.

¶63 I write also to state my difficulty reconciling the significantly different levels of discipline imposed in the following cases.

- OLR v. Krogman, 2015 WI 113, ___ Wis. 2d ___, ___ N.W.2d ___: Upon stipulation admitting factual allegations, the court orders a four-month suspension of license and conditions upon reinstatement. The

1

complaint alleged 22 counts of professional misconduct involving four clients, misconduct relating to license suspension, and misconduct relating to trust accounts. The four-month suspension seems too light.

- OLR v. Aleman, 2015 WI 112, ___ Wis. 2d ___, ___ N.W.2d ___: Illinois imposed a two-year suspension for two counts of misconduct stemming from co-founding and working with a national debt settlement firm. Upon stipulation of the parties, this court orders reciprocal discipline in Wisconsin. The two-year suspension seems too harsh compared to the discipline imposed in other cases.

- OLR v. Sayaovong, 2015 WI 100, 365 Wis. 2d 200, 871 N.W.2d 217: This per curiam was released November 18, 2015, imposing suspension for a period of six months. Attorney Sayaovong defaulted in the discipline case. The complaint alleged six counts of misconduct, four counts involving two clients and two counts involving another client. In 2014 Attorney Sayaovong was publicly reprimanded for misconduct in two separate client matters. See OLR v. Sayaovong, 2014 WI 94, 357 Wis. 2d 312, 850 N.W.2d 940. The discipline does not seem consistent with the discipline imposed in other cases.

¶64 For the reasons set forth, I write about each of these cases.