# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1616-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Nathan E. DeLadurantey, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant-Appellant,<br>     v.<br>Nathan E. DeLadurantey,<br>      Respondent-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST DELADURANTEY

| | |
|---|---|
| OPINION FILED: | July 8, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

Per curiam. ANN WALSH BRADLEY, J., filed a concurring opinion.

NOT PARTICIPATING:

ATTORNEYS:

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

No. 2020AP1616-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Nathan E. DeLadurantey,
Attorney at Law:**

**FILED**

**Office of Lawyer Regulation,**

      **Complainant-Appellant,**

**JUL 8, 2022**

  **v.**

Sheila T. Reiff
Clerk of Supreme Court

**Nathan E. DeLadurantey,**

      **Respondent-Respondent.**

ATTORNEY disciplinary proceeding. *Attorney publicly reprimanded.*

¶1 PER CURIAM. The Office of Lawyer Regulation (OLR) appeals Referee Robert E. Kinney's report recommending that the court dismiss the disciplinary complaint filed against Attorney Nathan E. DeLadurantey alleging one count of offensive personality in violation of the Attorney's Oath, Supreme Court Rule (SCR) 40.15,[1] enforced pursuant to SCR 20:8.4(g).[2]

_____

[1] SCR 40.15 (Attorney's Oath) provides in relevant part: "I will abstain from all offensive personality . . .."

¶2 The OLR maintains that Attorney DeLadurantey's conduct to Attorney H.M., an associate in his law firm, constituted offensive personality and that a private reprimand is appropriate. Attorney DeLadurantey asks the court to accept the referee's recommendation and dismiss the offensive personality charge such that no costs would be imposed. Alternatively, if the court concludes that he committed misconduct, Attorney DeLadurantey seeks a private reprimand and asks the court to significantly reduce the costs, which are $20,530.47 as of November 4, 2021. The OLR maintains that full costs are appropriate.

¶3 We have no difficulty concluding that Attorney DeLadurantey's conduct to H.M., as alleged in the complaint, constituted offensive personality in violation of SCR 40.15, as enforced pursuant to SCR 20:8.4(g). Constrained by prior precedent, we elect to impose a public reprimand rather than a more severe sanction. We take issue with several aspects of the referee's report and for the reasons explained herein we reduce the costs by $2,960.37 and direct Attorney DeLadurantey to pay costs of $17,570.10. Restitution is not at issue; because this case solely concerns Attorney DeLadurantey's offensive conduct, there are no funds to restore.

¶4 Attorney DeLadurantey was admitted to practice law in Wisconsin in 2007 and practices in Brookfield. He has not

---

[2] SCR 20:8.4(g) provides: "It is professional misconduct for a lawyer to violate the attorney's oath."

previously been disciplined. Attorney DeLadurantey and H.M., the grievant, graduated from the same law school, which is not American Bar Association (ABA) accredited. They met at an alumni event. In 2012, Attorney DeLadurantey, by then an established attorney, hired H.M. as a junior associate. Attorney DeLadurantey's busy consumer litigation practice required both Attorney DeLadurantey and H.M. to work evenings and weekends and required extensive travel for interviews, depositions, and litigation.

¶5 It is undisputed that Attorney DeLadurantey and H.M. developed a friendship and that they socialized, exercised together, communicated frequently by text message, went on social outings during work travel, and generally spent a lot of time together. H.M. worked at the firm until October 2017. About five months after her departure, H.M. filed a grievance with the OLR alleging that her departure was due to Attorney DeLadurantey's pattern of inappropriate behavior toward her that at times constituted sexual harassment.

¶6 The complaint alleges that in 2014, H.M. spoke to Attorney DeLadurantey about the need to maintain clear boundaries in their social and professional relationship. In July 2015, Attorney DeLadurantey asked H.M. to travel with him to Door County to prepare for an upcoming trial. H.M. agreed and went to Door County with him but alleged this request made her uncomfortable, although she did not communicate this to Attorney DeLadurantey. When Attorney DeLadurantey suggested a

3

second trip for further trial preparation, H.M. told Attorney DeLadurantey that she would not join him on a second trip.

¶7 Later in 2015, Attorney DeLadurantey and H.M. had a trial scheduled in Florida. Attorney DeLadurantey rented a two bedroom Airbnb accommodation for them. During their stay in Florida, on one occasion H.M. took a nap on the couch in the common space and when she awoke, Attorney DeLadurantey was napping on the same couch and told her he did not want to be alone. On the same trip, while shopping together, Attorney DeLadurantey suggested H.M. purchase some "lucky underwear" for the forthcoming trial and gave her some money. H.M. reported that these incidents made her uncomfortable.[3]

¶8 The complaint alleged that in 2015 while they were traveling together on an airplane, Attorney DeLadurantey suggested H.M. put her legs across his lap. H.M. declined. Attorney DeLadurantey then pulled H.M.'s legs over his lap. When H.M. removed her legs, Attorney DeLadurantey attempted to pull H.M.'s head onto his shoulder. H.M. alleges that several times between late summer and December 2015 Attorney DeLadurantey placed his hand on H.M.'s leg above her knee while

---

[3] H.M. explained that she did not feel comfortable confronting Attorney DeLadurantey because she was concerned for her employment security. The complaint alleged that Attorney DeLadurantey would tell H.M. she was lucky to have a job with him because it was unlikely another law firm would hire her or pay her what she was earning with his firm, because she (like Attorney DeLadurantey) was not a graduate of an ABA accredited law school. The complaint alleged Attorney DeLadurantey told H.M. she did not possess the skills to manage her own law firm.

4

they were driving together. The complaint alleges that during this same period, on several occasions, Attorney DeLadurantey took and held H.M.'s hand. The complaint further alleges that in December 2015, H.M. expressed discomfort about unwelcome physical contact and asked Attorney DeLadurantey to respect "clear boundaries." She says Attorney DeLadurantey apologized and agreed to modify his behavior.

¶9 In February 2016, Attorney DeLadurantey and H.M. traveled to San Francisco, California for depositions. Attorney DeLadurantey rented a two bedroom Airbnb accommodation; each had their own bedroom. One evening, H.M. was watching television in a common area when Attorney DeLadurantey approached her and began rubbing her back and rubbing his arms up and down her arms and legs in a suggestive manner. H.M. alleges she was upset and scared, left the common area and went to her bedroom. Attorney DeLadurantey then texted H.M. from within the accommodation, asking: "Can I try and fix the awkwardness?" H.M. responded by text: "I'm pretty sure I'm going to throw up shortly - I'm struggling not to."

¶10 Later that same evening, H.M. and Attorney DeLadurantey spoke together in the kitchen and Attorney DeLadurantey told H.M. he wanted to take her upstairs to her bedroom and "hold her." H.M. said no. Attorney DeLadurantey left the kitchen. When H.M. went to her bedroom later, she found Attorney DeLadurantey lying in her bed. H.M. told Attorney DeLadurantey she was not going to share a bed with him and Attorney DeLadurantey left H.M.'s bedroom. The next

5

morning, Attorney DeLadurantey admitted to H.M. that his actions the previous night had been inappropriate, attributed them to intoxication, and apologized. Attorney DeLadurantey does not dispute this incident occurred.

¶11 H.M. and Attorney DeLadurantey agree that thereafter, their personal and working relationship deteriorated. Conflicts arose regarding H.M.'s vacation time and her responsibilities to the firm while she was on vacation. H.M. alleged that Attorney DeLadurantey was more critical of her work. She says he made it clear that he preferred her to wear makeup, and commented she looked like "trash" when she did not. Once in 2016, Attorney DeLadurantey told H.M. she could not attend a luncheon with a third party because she was not wearing makeup. In October 2017, H.M. told Attorney DeLadurantey she had applied for a position with another firm. They ultimately negotiated a severance package and H.M. left the firm in late October 2017.

¶12 On September 29, 2020, the OLR filed a complaint against Attorney DeLadurantey alleging that by subjecting H.M. to physical contact and sexual advances, and to inappropriate comments regarding her physical appearance, in each instance Attorney DeLadurantey violated SCR 20:8.4(i)[4] (sexual harassment)

---

[4] SCR 20:8.4(i) provides: "It is professional misconduct for a lawyer to harass a person on the basis of sex, race, age, creed, religion, color, national origin, disability, sexual preference or marital status in connection with the lawyer's professional activities." The OLR dismissed this charge. The court is perplexed as to why the OLR elected to dismiss the sexual harassment charge on this record, but that issue is not before us.

and did not abstain from offensive personality in violation of the Attorney's Oath, SCR 40.15, enforced via SCR 20:8.4(g). The OLR sought a private reprimand.

¶13 Attorney DeLadurantey filed an answer admitting some but not all of the factual allegations, providing context for others, and denying he committed professional misconduct. Referee Kinney was appointed on December 10, 2020. Extensive discovery ensued. Hundreds of pages of exhibits, photographs, and text messages were produced, as well as Attorney DeLadurantey's and H.M.'s deposition transcripts.

¶14 On May 17, 2021, shortly before the scheduled evidentiary hearing, the OLR dismissed the sexual harassment charge, SCR 20:8.4(i), and Attorney DeLadurantey agreed to enter a "no contest" plea to the offensive personality charge, SCR 40.15 enforced pursuant to SCR 20:8.4(g). Referee Kinney agreed that the complaint provided a sufficient factual basis for the offensive personality charge and accepted Attorney DeLadurantey's no-contest plea. No evidentiary hearing was held. The only remaining issue was discipline; both parties requested a private reprimand. The referee ordered briefing on the question of appropriate discipline.

¶15 Following receipt of the briefing regarding discipline, the referee filed a 23-page report concluding that Attorney DeLadurantey committed the alleged misconduct[5] but,

---

[5] Finding #3 of the referee's report explicitly confirms the referee's previous determination that that the complaint provides an adequate factual basis for the offensive personality charge.

7

based on the referee's own "additional findings,"[6] the referee recommends we dismiss the complaint and/or impose no discipline on Attorney DeLadurantey.  The OLR appeals.

¶16  On an appeal from a referee's report, we will affirm a referee's findings of fact unless they are found to be clearly erroneous and we review the referee's conclusions of law on a de novo basis.  In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125.  We determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it.  In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶17 The referee's report is concerning in several respects.  It is internally inconsistent, contains superfluous and in some instances clearly erroneous factual findings, reflects an incorrect application of law, and expresses the concerning opinion that Attorney DeLadurantey's inebriated sexual advances to his employee in San Francisco violates no rule of professional conduct and merits no discipline.  First, the referee's report is internally inconsistent.  The referee explicitly finds that the complaint forms an adequate factual basis for Attorney DeLadurantey's no contest plea to offensive personality, but then inconsistently states that Attorney DeLadurantey's conduct was not offensive and thus recommends we

_____

[6] Finding #4 of the referee's report states that "[a]dditional findings appear below."  Those "additional findings" are recounted in a narrative form.

8

dismiss the charge and/or impose no discipline. A referee can reject a previously accepted no contest plea and recommend dismissal of a previously admitted violation. See In re Disciplinary Proceedings Against Clark, 2016 WI 36, 368 Wis. 2d 409, 878 N.W.2d 662 (following attorney's entry of a no contest plea to charge in a disciplinary complaint, the referee concluded that the OLR had failed to meet its burden of proof with respect to that charge). That is not what the referee has done here. Rather, the report contains conflicting and thereby confusing findings of fact and conclusions of law as to whether Attorney DeLadurantey engaged in offensive personality.

¶18 The referee's narrative recounting of "additional findings" is also problematic. Most of these additional findings pertain to whether Attorney DeLadurantey engaged in sexual harassment in violation of SCR 20:8.4(i). However, the OLR dismissed that charge.[7] Unaccountably, the referee nonetheless proceeded to make a number of wholly superfluous factual findings regarding whether Attorney DeLadurantey's conduct legally constituted sexual harassment. These findings include various credibility determinations that far exceed the scope of the complaint, which was the agreed upon basis for Attorney DeLadurantey's no contest plea to a violation of the Attorney's Oath.

¶19 In making these additional findings, the referee purported to distill what he deems "uncontroverted facts" from

---

[7] See supra at ¶14.

9

the voluminous discovery record. Yet, many of these findings are not derived from "uncontroverted facts." Rather, the referee offers his opinion and interpretation of many disputed factual events despite the absence of any stipulation or witness testimony on which to base his implicit credibility determinations. There was no reason for the referee to undertake a lengthy legal analysis of a claim that the OLR had dismissed, and the expansive scope of the referee's "additional" findings of fact far exceed what was necessary to confirm an adequate factual basis or to recommend a sanction. Moreover the "additional" factfinding resulted in the referee turning the tables and blaming the victim seemingly for being present during Attorney DeLadurantey's several incidents of inappropriate, harassing, offensive, and boorish behavior.

¶20 We will overturn a referee's factual findings if those findings are clearly erroneous. Several of the referee's "additional findings" are also clearly erroneous. In re Disciplinary Proceedings Against Boyle, 2015 WI 110, ¶41, 365 Wis. 2d 649, 872 N.W.2d 637.

¶21 The referee found that Attorney DeLadurantey "asked" to escalate the relationship with H.M. in San Francisco. This finding is clearly erroneous. A law firm owner drunkenly groping a subordinate attorney is not a request, nor is getting into a subordinate attorney's bed on a business trip without her consent.

¶22 The referee found that Attorney DeLadurantey's sexual advances to H.M. in San Francisco were not "unwelcome" and that

10

H.M. could not have experienced a hostile or toxic work environment based on certain information the referee gleaned from the record. This "information" consisted of photographs of H.M. and Attorney DeLadurantey taken while they stayed at "various beach accommodations" on business trips;[8] the fact that H.M. was well compensated; that Attorney DeLadurantey gave H.M. more than the usual amount of professional authority, including management consultation; and that after the incident in San Francisco, H.M. remained employed at the firm for almost 20 months.  The referee's apparent assumption that a preexisting friendship, pleasant surroundings, or a decent salary precludes an employee from being subjected to offensive, hostile, or unwelcome conduct by one's boss is clearly erroneous.[9]

¶23 Compounding these erroneous "additional findings" is the fact that on this record, it was unnecessary for the referee

_____

[8] The record contains a number of photos that show Attorney DeLadurantey and H.M. and occasionally another firm employee at various client locations and vacation spots smiling at a camera. None depict any intimate contact.

[9] The referee also found that Attorney DeLadurantey's comments to H.M. regarding her dress and use of makeup could not support a charge of "offensive personality."  Because we determine that the incident in San Francisco, standing along, was sufficient to substantiate the offensive personality charge, we need not decide whether these allegations, standing alone, might also constitute offensive personality.  However, it is troubling that the referee scoured the record to independently decide that Attorney DeLadurantey's comments to H.M. "appear to have been 'couple's banter' made in the context of a private, personal relationship."  The referee then engaged in inappropriate speculation, concluding that the "real" reasons H.M. eventually left the firm was due to a "break-up" that the referee attributed to tension over H.M.'s frequent vacations.

11

to make them at all.  It appears they stem from the referee's incorrect assumption that legally, a violation of SCR 40.15 (violation of the Attorney's Oath) requires that the attorney's challenged conduct <u>also</u> violated SCR 20:8.4(i) (sexual harassment).[10]  This is incorrect.  These are separate rule provisions.  A violation of SCR 20:8.4(i) is not a required element for a violation of the Attorney's Oath, SCR 40.15 enforced pursuant to SCR 20:8.4(g).  As such, the referee's lengthy sexual harassment analysis, including his assessment of the "welcomeness" of Attorney DeLadurantey's conduct, and the additional findings pertaining to that analysis are misplaced and we reject them.

¶24 The referee also erroneously assumed that the discussions H.M. and Attorney DeLadurantey had about "boundaries" pertained only to travel housing arrangements. However, the record shows that in December 2015, Attorney DeLadurantey acknowledged that:

> [T]here was a discussion of the two hand holding occasions.  At that time, [H.M.] did indicate she wasn't comfortable with it, that he was married, and that their mutual faiths . . . wouldn't approve of such contact.  [H.M.] indicated that the hand holding should stop before something happened.  Mr. DeLadurantey agreed, apologized for having held her hand, and never did it again.

---

[10] The referee queried, "[i]f DeLadurantey's conduct was welcome (which, presumably, was the primary basis for [OLR's] dismissal of the sexual harassment charge), how could the same conduct be offensive?"  (Emphasis in original omitted).

¶25 The referee also erroneously accuses H.M. of "moving the goal posts", that is, being inconsistent with respect to permissible "boundaries." The referee apparently faults H.M. because she initially expressed discomfort about staying in a shared Airbnb lodging but later she agreed to and approved various Airbnb accommodations for business travel. However, as noted above, the record does not support the finding that H.M.'s reference to "boundaries" only pertained to travel lodging. We see no evidence that H.M.'s position regarding unwanted sexual contact ever changed, nor that she conceded her "boundaries" changed. Therefore, we deem clearly erroneous the referee's finding that H.M. "conceded the goal posts seemed to move . . . ." We accept and affirm only factual findings 1-3 in the referee's report.[11]

---

[11] The first three findings in the referee's report state as follows:

> 1. The respondent was licensed to practice law in the State of Wisconsin on April 18, 2007. He operates his own law firm, located in Brookfield, Wisconsin.
>
> 2. On May 17, 2020, the respondent entered a plea of "no contest" to the charge of "offensive personality" contained in OLR's Complaint filed on September 29, 2020. Before and at the time the plea was entered the respondent was represented by counsel, and he fully understood the rights he was waiving by entering the plea, as the record of the proceedings shows.
>
> 3. Upon my independent review of the allegations contained in the Complaint, I find that the Complaint contains an adequate factual basis for the charge of "offensive personality."

¶26 The referee's faulty analysis caused the referee to conclude that Attorney DeLadurantey's conduct did not, as a matter of law, constitute offensive personality under SCR 40.15 and SCR 20:8.4(g). In the referee's view, H.M. and Attorney DeLadurantey had a lengthy platonic relationship which involved occasionally sharing hot tubs, mutual back rubs, and hand holding, which he deemed to be all voluntary, "welcome" conduct. The referee thus concludes that the San Francisco incident could not have been unwelcome and therefore was not "offensive" as that term is used in SCR 40.15. In short, the referee assumes that because H.M. had enjoyed spending time with Attorney DeLadurantey and was comfortable with sharing a hot tub at a hotel and shoulder rubs[12] it was not offensive for Attorney DeLadurantey to suggest his employee purchase "lucky trial underwear" while they were shopping during a business trip, or to drunkenly run his "hands up and down her arms and legs" or, after she informed him this overture made her nauseous, to climb into her bed a few hours later. We flatly reject the referee's

---

[12] In her deposition, H.M. testified there were a few occasions she asked Attorney DeLadurantey for "a shoulder rub." H.M. described this conduct as friendly, not flirtatious. In other words, H.M. did not consider a shoulder rub to be sexually suggestive physical contact.

characterization of these events.[13] A subordinate attorney who befriends the boss should not be assumed to "welcome" the boss's drunken sexual overtures when the employee has unequivocally rejected such advances.

¶27 The referee's analysis fails because a failure to abstain from offensive personality under the Attorney's Oath does not require that the attorney's conduct constitute sexual harassment under SCR 20:8.4(i). Additionally, it fails because the referee disregards the critical fact that Attorney DeLadurantey was, at all times, H.M.'s employer.[14]

¶28 What then is required to constitute a failure to abstain from offensive personality under the Attorney's Oath? Our profession requires attorneys to maintain certain standards of conduct. See, e.g., SCR 20:3.1; SCR 20:8.4; and SCR 62.02. The Attorney's Oath taken by every lawyer when admitted to practice requires attorneys to "abstain from all offensive personality" and we have disciplined attorneys for failing to do

---

[13] The OLR notes that even if the "welcomeness" of Attorney DeLadurantey's conduct is deemed relevant (which it disputes), an objective, reasonable and prudent person would have no trouble ascertaining that H.M.'s consistent rejection of Attorney DeLadurantey's physical advances signaled that those attempts were not welcome. We agree. The record is clear that H.M. clearly and repeatedly signaled that Attorney DeLadurantey's drunken sexual overtures in San Francisco were unwelcome, and any finding to the contrary is clearly erroneous.

[14] Referencing Attorney DeLadurantey's comments about H.M.'s appearance, the referee opines, "it is likely that these comments were not made to [H.M.] as an employee but were instead made to [H.M.] as a female friend and traveling companion . . .."

so.[15] We have stated, moreover, that an attorney may violate the Attorney's Oath by conduct that occurs out of court as well as by in-court conduct. See In re Disciplinary Proceedings Against Johann, 216 Wis. 2d 118, 574 N.W.2d 218 (1998). However, its application is restricted to conduct that reflects adversely on a person's fitness as a lawyer. Johann 216 Wis. 2d at 122.

¶29 The referee is correct that we must take care that the term "offensive personality" not be read to include conduct that the court, acting on behalf of the state, has no legitimate interest in prohibiting. We also take care to limit the scope and application of the Attorney's Oath so that it does not reach constitutionally protected conduct or significantly inhibit an attorney's exercise of the right of free speech. In re Disciplinary Proceedings Against Sommers, 2012 WI 33, 339 Wis. 2d 580, 811 N.W.2d 387. The conduct we regulate by this rule transcends mere incivility. However, the provisions of that oath are expressly incorporated into the rules promulgated by this court governing the professional conduct of attorneys. Under those rules a violation of the Attorney's Oath constitutes professional misconduct. SCR 20:8.4(g).

¶30 We have previously ruled that sexually inappropriate language and conduct may constitute offensive personality in

---

[15] This court has upheld the constitutionality of the "offensive personality" phrase in the Attorney's Oath as applied to an attorney's professional conduct. See In re Disciplinary Proceedings Against Beaver, 181 Wis. 2d 12, 510 N.W.2d 129 (1994).

various scenarios:  trading surreptitiously taken photographs of nude minors without their consent, In re Disciplinary Proceedings Against Bruckner, 161 Wis. 2d 385, 467 N.W.2d 780 (1991); using the state's e-mail system to send and receive sexually explicit e-mail messages and making inappropriate comments to a county employee in a work environment; In re Disciplinary Proceedings Against Beatse, 2006 WI 115, 297 Wis. 2d 292, 722 N.W.2d 385; repeatedly asking a woman divorce client explicit questions about her sexual behavior; In re Disciplinary Proceedings Against Heilprin, 168 Wis. 2d 1, 482 N.W.2d 908 (1992); and shouting obscenities at a female client, Public Reprimand of Richard L. Jones, No. 1992-17.[16]

¶31 Here, the complaint alleges that, during a business trip a law firm partner - while intoxicated – made unwelcome sexual advances to a subordinate associate which were clearly rebuffed, then the same evening the lawyer entered that employee's separate bedroom without permission and climbed, uninvited, into the employee's bed.  We refuse to ignore such behavior on the part of a supervising attorney with a subordinate employee.  To do otherwise would condone behavior

---

[16] Electronic copy available at https://compendium. wicourts.gov/app/raw/000311.html).  Sexually inappropriate language and conduct is by no means the only type of behavior that can constitute offensive personality under SCR 40.15 and SCR 20:8.4(g).  See, e.g., In re Disciplinary Proceedings Against Blask, 216 Wis. 2d 129, 573 N.W.2d 835 (1998) (lawyer committed offensive personality by engaging in a loud physical confrontation with a 67-year-old man leaving the register in probate's office and, in separate incident, shoving a high school basketball referee over a game call).

17

that is detrimental to the reputation and integrity of the legal profession. Because of Attorney DeLadurantey's position as H.M's supervisor, he put H.M. in an impossible position. Additionally, Attorney DeLadurantey held the keys to her success. If she crossed him, she risked professional and financial harm. Attorney DeLadurantey's offensive conduct to H.M. in San Francisco, given the context of their employer-employee relationship, clearly crossed the line separating the personal from the professionally offensive, showed a lack of trustworthiness and reflected poorly on his professional judgment and ability, thereby reflecting adversely on Attorney DeLadurantey's fitness to practice law.

¶32 Accordingly, we accept the referee's Finding #3 that that the complaint contains an adequate factual basis for a charge of "offensive personality" and his conclusion that the allegations in the complaint demonstrate by clear, convincing, and satisfactory evidence that Attorney DeLadurantey's conduct in San Francisco violated the Attorney's Oath constituting offensive personality, in violation of SCR 40.15, enforced pursuant to SCR 20:8.4(g).

¶33 We now consider the appropriate sanction. We weigh the seriousness, nature and extent of the misconduct; the level of discipline needed to protect the public; the need to impress upon the attorney the seriousness of the misconduct; and the need to deter other attorneys from similar misconduct. In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, 269 Wis. 2d 43, 675 N.W.2d 747. Sources of guidance in determining

18

appropriate sanctions are: prior case law; aggravating and mitigating factors; and ABA Standards for Imposing Lawyer Sanctions. In re Disciplinary Proceedings Against Arthur, 2005 WI 40, 279 Wis. 2d 583, 694 N.W.2d 910.

¶34 Ironically, Attorney DeLadurantey appears more mindful of his own culpability than does the referee, acknowledging that his conduct in San Francisco was wrong. The referee, however, suggests that Attorney DeLadurantey's conduct to H.M. merits no discipline, citing In re Disciplinary Proceedings Against Johns, 2014 WI 32, 353 Wis. 2d 746, 847 N.W.2d 179 (finding no SCR 20:8.4(b) violation despite an attorney's conviction for the vehicular homicide of his brother in light of evidence showing the exceedingly anomalous nature of the attorney's conduct and his full acceptance of responsibility for its tragic consequences). Johns was a very different case. Attorney Johns was criminally prosecuted then charged with a violation of SCR 20:8.4(b), which states that it is professional misconduct to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. Attorney Johns was deeply remorseful and had served prison time for his conviction. We concluded that the accident did not reflect adversely on John's fitness as a lawyer. By contrast, Attorney DeLadurantey was not criminally charged for his misconduct. His misconduct involved a subordinate employee at his law firm and does reflect on his fitness as a lawyer.

¶35 The referee points to ABA Comment [2] to ABA's Model Rule 8.4, upon which SCR 20:8.4 was based, which states:

19

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offenses carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. (Emphasis added.)

¶36 The referee argues this court should overlook Attorney DeLadurantey's conduct on the grounds that an office extramarital relationship is not necessarily an offense that reflects adversely on a lawyer's fitness to practice law. This perspective completely ignores the actual record before us. Attorney DeLadurantey made unwanted sexual overtures to a subordinate employee on a business trip, and that does reflect adversely on his fitness to practice law.

¶37 The parties both request a private reprimand and the referee agreed a private reprimand would be appropriate if we decline to dismiss the case or impose no discipline. The collective recommendation reflects an unfortunate historical reality. Under past precedent, a lawyer's sexually offensive language and conduct has often received no more than a private or public reprimand. See, e.g., Private Reprimand No. 1991-6 (private reprimand imposed on lawyer who, while awaiting the return of a jury, approached a female law enforcement officer at a courthouse and made statements that she interpreted as sexually aggressive, later grabbed her shoulders and attempted to embrace her, and later approached a different female officer,

20

pushed her against a wall and made suggestive and disparaging remarks); Private Reprimand No. 2008-38 (private reprimand imposed on an attorney who made sexually suggestive comments to a co-worker over a period of several years and on one occasion, kissed the co-worker without consent); Private Reprimand No. 2015-2 (imposing private reprimand on attorney who grabbed breast of female employee of a bar, made several sexually suggestive and offensive comments to her, followed her home, was arrested, and charged with fourth-degree sexual assault). Past precedent constrains us to impose no more than a public reprimand on Attorney DeLadurantey, but we take this opportunity to remind practitioners that we are applying increasing scrutiny to attorneys' sexual misconduct. Compare In re Disciplinary Proceedings Against Ritland, 2021 WI 36, 396 Wis. 2d 509, 957 N.W.2d 540. We do so because sexual harassment comes at a heavy price for victims who can suffer significant psychological effects as well as job-related costs, including job loss, reputational harm, impairment of professional opportunities, and irreparable damage to interpersonal relationships at work. At the risk of redundancy, we emphasize that sexual misconduct by attorneys, whether with clients or non-clients, is not taken lightly. Ritland, 396 Wis. 2d 509, ¶39.

¶38 We turn to the question of costs, which are $20,530.47 as of November 4, 2021. Attorney DeLadurantey filed an objection to costs, arguing that SCR 22.24(1m) merits reducing the costs imposed on him. Supreme Court Rule 22.24(1m) articulates six factors we consider when evaluating a costs

21

challenge. First, we consider the number of counts charged, contested, and proven. In Attorney DeLadurantey's view the OLR's "major focus" was the sexual harassment charge that the OLR eventually dismissed. He argues that because the OLR dismissed this count, no costs should be assessed in connection with the OLR's pursuit of this violation. Second, we consider the nature of the misconduct. Attorney DeLadurantey says that had the offensive personality been the only claim from the outset, the costs incurred would have been substantially lower. Third, we consider the level of discipline sought by the parties and recommended by the referee. The parties and the referee recommended a private reprimand or dismissal. Fourth, we consider Attorney DeLadurantey's cooperation with the disciplinary process. It is undisputed that Attorney DeLadurantey cooperated throughout the disciplinary process. Fifth, we consider prior discipline. Attorney DeLadurantey has no prior disciplinary record. Finally, we consider "other relevant circumstances." Attorney DeLadurantey contends that the "sexual harassment claim was poorly based in fact from the start and all costs in furtherance of the OLR's attempts to satisfy that claim should not be assessed." He suggests we impose ten percent of the total costs, or $2,053.05.

¶39 The OLR maintains that the sexual harassment and offensive personality claims were intertwined; the OLR's counsel spent time concurrently pursuing both. The OLR reminds us that traditionally, costs are not reduced even when a respondent

22

prevails on several counts, and cites several cases in support of this assertion.

¶40  We agree with the OLR.  We decline to deviate from our long-standing disinclination to apportion costs on the number of counts proven or unproven.[17]  We note, moreover, that the referee found the pre-appellate costs to be both reasonable in amount and necessarily incurred, stating:

> Having read and made notes on the hundreds of pages of exhibits provided by both counsel, and having performed many hours of research, I am in a good position to assess the work that went into this case. I find that the sum of $18,311.47 is reasonable, and the costs enumerated were necessarily incurred by the [OLR] in this matter.

¶41  We acknowledge that Attorney DeLadurantey has, by all accounts, cooperated completely with this disciplinary matter. He entered a no contest plea to offensive personality, but the referee undertook a lengthy analysis and issued a problematic report, resulting in the OLR's appeal.  The referee billed $5,920.74 for the time spent writing his report which, unfortunately has delayed and complicated this matter.  We reduce the costs billed for writing the report by 50 percent or $2,960.37.  We direct Attorney DeLadurantey to pay the remaining

---

[17] See, e.g., In re Disciplinary Proceedings Against Eisenberg, 144 Wis. 2d 284, 423 N.W.2d 867 (1988) (declining respondent's request to apportion costs according to the number of misconduct counts that resulted in determinations of professional misconduct); In re Disciplinary Proceedings Against Konnor, 2005 WI 37, 279 Wis. 2d 284, 694 N.W.2d 376 (rejecting argument that costs not be assessed because he would have agreed to a public reprimand, which the referee ultimately recommended as discipline).

costs of $17,570.10. Finally, we reject the referee's unsupported recommendation that we "seal" this case.

¶42 IT IS ORDERED that, as discipline for his professional misconduct and violation of SCR 40.15, enforced via SCR 20:8.4(g), Nathan E. DeLadurantey is publicly reprimanded.

¶43 IT IS FURTHER ORDERED that within 60 days of the date of this order, Nathan E. DeLadurantey shall pay to the Office of Lawyer Regulation $17,570.10 for the costs of this proceeding.

¶44 IT IS FURTHER ORDERED that the Office of Lawyer Regulation shall advise this court if Nathan E. DeLadurantey fails to comply with all conditions of this order. See SCR 22.28(2).

¶45 BRIAN HAGEDORN, J., I concur only in the mandate.

¶46 ANN WALSH BRADLEY, J. *(concurring).* I considered joining only the mandate of this per curiam and writing nothing more, as does my colleague Justice Brian Hagedorn. For me, that would accomplish a total disassociation from the opinion's discussion, a desired goal. Ultimately, however, I decided to write separately to address some of the blatant infirmities of the opinion.

¶47 First and foremost, I stress that this is a lawyer discipline case. Nevertheless, the majority skews the focus, spending more ink on addressing the perceived assumptions and conduct of the referee, rather than on the actual conduct of the lawyer. What started out as a case where the Office of Lawyer Regulation was seeking only a private reprimand has certainly escalated well beyond its modest beginning.

¶48 Referees serve at the pleasure of the court, as do most of the court's appointees. The undertones of the per curiam should issue an alert: Appointees beware, lest your conduct become the focus of future public discussion. The majority's skewed focus sets a dangerous precedent.

¶49 And speaking of precedent, the majority would have the reader believe that Attorney Nathan DeLadurantey is actually deserving of greater discipline than a mere public reprimand, but its hands are tied. It asserts that because the court is "[c]onstrained by prior precedent, we elect to impose a public reprimand rather than a more severe action." Per curiam, ¶3. Nonsense. One need look only to the recent case of In re Disciplinary Proceedings Against Meyer to know that when the

court so desires, it can toss precedent to the wind, ignoring it completely.[1] The imposition of a public reprimand, one of the lowest levels of attorney discipline, appears markedly at odds with the court's discussion that takes the referee to task for failing to recognize the serious nature of the offense. Id., ¶¶34-36. Its claim that it is constrained by precedent here appears disingenuous.

¶50 After setting forth the facts and the standard of review, the per curiam directs its focus on the referee, describing his report, among other things, as "internally inconsistent." Id., ¶17. This brings to mind the adage that one can see the splinter in a neighbor's eye, but not the log in their own.

¶51 The per curiam is marred by internal inconsistency. Detailing some of the cases, the per curiam ultimately acknowledges that "[w]e have previously ruled that sexually inappropriate language and conduct may constitute offensive personality." Id., ¶30. Yet, at the outset of its discussion, the per curiam takes the referee to task for making "wholly superfluous factual findings regarding whether Attorney DeLadurantey's conduct legally constituted sexual harassment." Id., ¶18. The majority can't have it both ways: either a discussion of sexually inappropriate language and conduct is

---

[1] In a case released only a few weeks ago, In re Disciplinary Proceedings Against Meyer, 2022 WI 39, ___ Wis. 2d ___, ___N.W. 2d ___, not only did the court fail to follow existing precedent, it failed to cite any precedent whatsoever that supported the level of discipline to be imposed.

relevant because it can constitute offensive personality subject to discipline, or discussion of it by a referee is "wholly superfluous." Which is it?

¶52 Because the per curiam is skewed in its focus, disingenuous in its claim of being constrained by precedent in its choice of the level of discipline to impose, and marred by internal inconsistency, I respectfully concur.